1

**MANFRED, APC**

2

Manfred P. Muecke (SBN: 222893)

mmuecke@manfredapc.com

3

1350 Columbia Street, Suite 603

San Diego, CA 92101

4

Telephone: (619) 550-4005

5

Fax: (619) 550-4006

6

**CARLSON LYNCH LLP**

7

Todd D. Carpenter (SBN: 234464)

tcarpenter@carlsonlynch.com

8

Scott G. Braden (SBN: 305051)

9

sbraden@carlsonlynch.com

1350 Columbia Street, Suite 603

10

San Diego, CA 92101

11

Telephone: (619) 762-1910

Fax: (619) 756-6991

12

13

*Attorneys for Plaintiff*

14

15

16

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

17

18

**DAVID ABEL**, On Behalf of Himself
and All Others Similarly Situated,

**CLASS ACTION COMPLAINT**

19

20

Plaintiff,

**DEMAND FOR JURY TRIAL**

21

vs.

22

**CITIBANK, N.A.**,

23

Defendant.

24

25

26

27

28

# Table of Contents

**INTRODUCTION** ..................................................................................1

**JURISDICTION AND VENUE** ..........................................................6

**PARTIES** ............................................................................................7

**FACTUAL ALLEGATIONS** ..............................................................7

Citi Defines What Are Considered Standard Purchases And Cash Advances .........7

Cardholders Incur Significant Costs From Cash-Like Transactions ........................9

Plaintiff's Transactions .........................................................................10

**CLASS DEFINITIONS AND ALLEGATIONS** .................................13

Numerosity ............................................................................................14

Predominance of Common Issues .........................................................14

Typicality ..............................................................................................15

Adequacy of Representation ..................................................................15

Superiority .............................................................................................16

Rule 23(b)(2) .........................................................................................17

Rule 23(b)(3) .........................................................................................17

**COUNT I Breach of Contract** ............................................................18

**COUNT II Violation of Truth in Lending Act** .................................20

**COUNT III Violation Of The California Unfair Competition Law** ........23

Fraudulent Prong ...................................................................................24

Unlawful Prong .....................................................................................25

Unfair Prong ..........................................................................................26

**PRAYER FOR RELIEF** ......................................................................27

**JURY TRIAL DEMANDED** ...............................................................28

Upon information and belief, Plaintiff David Abel ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Citibank, N.A. ("Citi" or "Defendant") and states:

## INTRODUCTION

1.     In recent years, the prevalence of mobile electronic payment applications ("MEP Apps") such as Venmo, PayPal, and Cash App has dramatically increased and spawned a nascent era of new methods to pay for goods and services.  As consumers and businesses have been drawn to these new MEP Apps, the popularity and usage of these platforms have markedly increased over the last few years.

2.     Upon consumer registration with these MEP Apps and confirmation of identification, end user consumers of these MEP apps ("mobile payors") are presented with various options to fund mobile payments to peers as well as entrepreneurs, businesses, contractors, and the like for the purchase of goods and services. These mobile payment methods generally include any available balance in the mobile payor's Venmo or PayPal account as well as a link to a funding source as selected by the mobile payor. MEP app funding sources generally include checking or savings accounts, a debit card, and major consumer credit cards such as Visa or MasterCard.

3.     When mobile payors elect the option to utilize a personal credit card to fund a mobile payment through a MEP App, a modest transaction fee of

approximately 3% is imposed by the MEP App on mobile payors for processing a mobile payment with a consumer credit card. This transaction fee is consistently disclosed by the MEP Apps prior to confirming the mobile electronic purchase as a condition for using a credit card to fund the mobile electronic payment. These transaction fees imposed by MEP Apps are not contested by Plaintiff and the putative class of mobile payors.

4.    Citi is one of the largest issuers of credit cards with nearly $400 billion in purchase volume in 2020. Citi generally directs credit card transactions made with a Citi consumer credit card into one of three categories -- standard purchases, balance transfers, and cash advances. Citi's categorization of its credit card transactions is critical as it directly impacts the cost of credit borne by the consumer including, but not limited to, the interest rate applicable to the transaction, the applicability of an interest free grace period, and whether a transaction fee (such as a cash advance fee) will be incurred by the consumer.

5.    Until recently, Citi processed MEP app transactions funded by a Citi credit card as standard purchase transactions.  Citi defines "purchases" (herein referenced as "standard purchases") as buying goods and/or services with a Citi consumer credit card as more fully defined below.  Standard purchase transactions are subject to Citi's standard purchase interest rates and interest-free grace periods ("grace period on purchases") and do not incur a transaction fee, as disclosed in

Defendant's consumer credit card agreements ("Card Agreement"). Exhibit A, pgs. 1, 3

6.      Starting sometime in early 2020, without warning or advance notice to its consumers, Citibank began to re-classify purchase transactions made through MEP Apps funded with Citibank consumer credit cards as cash advances.[1] Unlike standard purchase transactions, cash advance transactions incur a fee on each such transaction, are subject to higher interest rates, and have interest calculated from the date of purchase without any grace period. Exhibit A, pgs. 1, 3

7.      A cash advance fee is "Any fee imposed for an extension of credit in the form of cash or its equivalent."  12 C.F.R. § 1026.6(b)(2)(vii).

8.      According to its Card Agreement, Citi charges cash advance fees to transactions it categorizes as cash advances, such as cash withdrawals from ATMs where a credit card is used to make the withdrawal. Citi also charges cash advance fees on "cash-like transactions" such as purchase of casino gaming chips, money orders, wire transfers, traveler's checks, lottery tickets, and other similar transactions as set forth in the Citi Card Agreement. Exhibit A, pgs. 1, 3

9.      Unlike a standard purchase, there is no interest-free grace period applicable to cash advances and thus, interest accrues immediately from the time of

---

[1] Carrns, Ann; *Beware the Fees That Come With Some Money Transfers on Apps*; New York Times, April 24, 2020 (updated Nov. 6, 2020); https://www.nytimes.com/2020/04/24/your-money/fees-mobile-app-payments.html (*last checked* May 7, 2021)

the transaction. Cash advances can also incur a higher applicable "Cash Advance APR" interest rate as compared to "Purchase APR" interest rates or other introductory promotional interest rates applied to a standard purchase.

10.     MEP App purchase transactions funded by a Citi consumer credit card had been previously coded and processed as standard purchases subject to the comparatively lower "Purchase APR" and introductory interest rates. These standard purchase transactions did not incur a cash advance transaction fee and qualified for an interest free grace period under the terms of the Citi Card Agreement. Without warning, MEP App transactions processed by Citi morphed from standard purchase transactions into cash advances for which the MEP App user was charged a cash advance fee, subject to a higher interest rate, and began accruing interest on the transaction date without the benefit of a grace period applicable for standard purchase transactions.

11.     Citi's undisclosed reclassification of MEP APP transactions from standard purchases to cash advances amounted to a significant material deviation from its application of its Card Agreement account terms. Yet, Citi elected not to amend its current Card Agreement terms or otherwise advise its cardholders of the impending change in how it would classify and process MEP App payments funded by a Citi credit card.

12.     The Truth In Lending Act ("TILA"), implemented through Regulation Z, mandates credit card account opening disclosures be "clear and

conspicuous". 15 U.S.C. §§1632(a), 1637, *et seq*.; 12 C.F.R. §1026.5(a)(1)(i). Compliance with these disclosure requirements is accomplished by clearly stating the applicable interest rate, charges, and fees to certain types of transactions, especially if different types of transactions incur different rates. 12 C.F.R. §1026.6(b)(4)(i)(C).

13.     Citi sowed confusion among its cardholders who reasonably believed the purchase of goods and services through MEP Apps would be classified as standard purchases consistent with the Citi Card Agreements as well as Citi's established practice of previously processing such transactions as standard purchases. As a result, Plaintiff and Class Members incurred cash advance fees and incurred interest charges without a grace period because Citi failed to clearly and conspicuously disclose it would classify a segment of standard purchase transactions as cash advance transactions because they were made through a MEP App.

14.     Despite the ubiquity of mobile electronic payments over the last several years, Citi's decision to not disclose its re-classification of MEP App transactions as cash advances is a self-serving choice to derive fee and interest income at the expense of its credit card consumers who used their Citi consumer credit card to fund MEP App transactions.

15.     This sudden and unannounced change left Plaintiff and other Class members saddled with unexpected fees and increased interest charges without any

warning that such a change in processing or coding of MEP App transactions was forthcoming by Citi. Indeed, Plaintiff was not made aware of the cash advance fee, higher interest rate, and lack of grace period applicable to his Venmo mobile electronic transactions funded with his Citi credit card until he reviewed his Citi credit card transaction history online after the transactions had already occurred. Plaintiff and Class Members were assessed higher credit transaction costs than they reasonably expected to as a result of Citi's undisclosed change in the classification and transaction processing of MEP app purchases.

16.    Plaintiff brings this action on behalf of himself and a proposed Class of Citi consumer credit card customers who were damaged by Citi's breach of its own Card Agreement and failure to clearly and conspicuously disclose how it would categorize and process MEP App payments in violation of TILA and other statutes.

## JURISDICTION AND VENUE

17.    This Court has original jurisdiction pursuant to 28 U.S.C. §1331.  This Court also has subject matter jurisdiction under claims arising pursuant to 15 U.S.C. §1601, *et seq.*

18.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 *et seq.* inasmuch Plaintiff resides in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred while he resided in this judicial

district. Venue is also proper in this Court under 18 U.S.C. §1965(a) because Defendant regularly transacts substantial business in this District.

## PARTIES

19.    Plaintiff David Abel is a resident of Los Angeles, California and has resided in Los Angeles during the relevant time period.

20.    Defendant Citibank, N.A. is a national banking and financial services company incorporated and headquartered in New York, New York. Defendant markets and issues consumer credit cards to consumers nationwide, including in California. Defendant is considered a creditor as defined under 15 U.S.C.A. §1602(g).

## FACTUAL ALLEGATIONS

### Citi Defines What Are Considered Standard Purchases And Cash Advances

21.    Defendant distributes a Card Agreement to every consumer and business who has been issued a credit card by Citi. At the option of the cardholder, the Card Agreement may be distributed to the cardholder in electronic or hardcopy paper form. Citi may elect to update the Card Agreement from time to time on an irregular basis.

22.    Attached to this complaint as Exhibit A, the current Citi Card Agreement applicable to Plaintiff's Citi Simplicity credit card account identifies what types of credit card transactions will be considered "Cash Advances".

**Cash Advance** - Use of your Card to get cash, including foreign

currency, or for what we consider a cash-like transaction. Examples include using your Card for: ATM and teller withdrawals, wire transfers, money orders, traveler's checks, lottery tickets, gaming chips and other methods used for gambling, wagers and other betting transactions. A Citi Flex Loan is not a Cash Advance.

Exhibit A, page 1.

23.    Notably omitted from Citi's exhaustive definition of Cash Advances, is any reference to mobile electronic payments as a cash-like item despite the prevalence of MEP Apps and the funding of payments with Citi credit cards over the last several years.

24.    Citi also defines what it considers to be standard purchases which center on the purchase of goods and services.

**Purchase** – Use of your Card to buy goods and services. Balance Transfers and Cash Advances are not Purchases.

*Id.*

25.    Citi issues several types of consumer credit cards that offer consumer perks or rewards such as cash back, airline miles, etc.[2]  Each type of consumer credit card issued by Citi is accompanied by a Card Agreement listing terms and rates applicable to the corresponding Citi consumer credit card.

26.    The Citi Card Agreements are form agreements with variations by card type in the "Purchase Annual Percentage Rate," "Balance Transfer APR", introductory promotional interest rates, and whether a foreign transaction fee is

---

[2] https://www.citi.com/credit-cards/home (*last accessed* May 7, 2021)

charged, but otherwise feature almost entirely identical terms. During the time period at issue, the definitions of "Cash Advance", "Cash Advance APR", and "Cash Advance Fee" are virtually identical across all Citi Card Agreements.

**Cardholders Incur Significant Costs From Cash-Like Transactions**

27.    When a transaction had been previously processed as a standard purchase credit card transaction is instead treated as a cash-like transaction and processed as a cash advance without advance notice, material and unexpected credit costs are thrust upon the cardholder.

28.    To illustrate, a standard purchase credit card transaction does not incur a transaction fee of any sort, while for each cash advance transaction, the cardholder is charged a cash advance fee of the greater of $10 or 5% of the amount of the transaction.

> **Transaction Fee for Cash Advances**: Either $10 or 5% of the amount of each cash advance, whichever is greater. We charge you a fee for each Cash Advance.

> Exhibit A, pg. 5

29.    A standard purchase credit card transaction also has an interest-free grace period during which interest will not be charged to the cardholder so long as the cardholder pays the entire balance before or by the due date each month. In contrast, interest is immediately charged to cash advances as of the transaction date and accrues until the balance including accrued interest is paid off.

**Grace Period on Purchases**. You won't pay any interest on Purchases if you pay the Adjusted New Balance, including any Balance Transfers, plus any Citi Flex Plan Payment Account, in full by the payment due date shown on your statement each Billing Period. We call this a **grace period on purchases**. If you don't pay your Adjusted New Balance in full, plus any Citi Flex Plan Payment Amount, by the payment due date in a Billing Period, you'll pay interest on your Purchases from the date they're posted to your Account. You also won't have a grace period on Purchases again until you pay the Adjusted New Balance in full, plus any Citi Flex Plan Payment Amount, by the payment due date 2 Billing Periods in a row.

There's no grace period on Balance Transfers and Cash Advances. This means you'll pay interest on Balance Transfers and Cash Advances from the date these Transactions post to your Account.

Exhibit A, pg. 3

### Plaintiff's Transactions

30.    Citi issued Plaintiff a Simplicity MasterCard on or around October 2019 with an introductory interest rate of 0% for standard purchase transactions through September 9, 2020.

31.    From on or around July 8, 2020 through October 9, 2020, Plaintiff issued mobile electronic payments through his Venmo MEP App funded by his Citi Simplicity MasterCard credit card to vendors for music recording and mixing services as well as lease of a recording studio. Plaintiff had previously paid these same vendors on several occasions using the same Venmo MEP App method funded by his Citi Simplicity MasterCard credit card which was processed by Citi as standard purchase transactions. As such, Plaintiff reasonably assumed his Venmo MEP App payments to these vendors would be processed as standard

purchases just as similar previous transactions with the same vendors had been processed.

32.    Sometime in October 2020, Plaintiff viewed his Citi Simplicity MasterCard credit card account balance and monthly statements online where to his surprise, he first observed his Venmo MEP App payments on July 8, 2020 had been assessed Cash Advance fees in the amount of $10 per transaction by Citi.

33.    Indeed, Plaintiff was assessed Cash Advance fees on his Venmo MEP App transactions on the following dates: July 8, 2020; July 27, 2020; July 31, 2020; August 1, 2020; and October 9, 2020.

34.    Plaintiff further observed he did not receive an interest grace period for these transactions and didn't receive the benefit of the zero percent introductory rate he enjoyed with his Citi Simplicity card for transactions prior to September 9, 2020. Plaintiff subsequently contacted Citi via phone to dispute the assessment of the "cash advance" fee. Citi refused to refund or cancel the cash advance fee and did not address the interest assessed and accruing upon Plaintiff's Venmo MEP App transactions.

35.    Plaintiff reasonably assumed purchases made through his Venmo MEP App for music-related services funded by his Citi credit card would be deemed standard purchases consistent with the terms of his Citi credit card agreement.

36.     Plaintiff also reasonably assumed his Venmo MEP App payment for music-related services funded by his Citi credit card would not be considered a cash advance nor a cash-like transaction under the terms of his Citi credit card agreement.

37.     Plaintiff did not deploy his Venmo MEP App payment funded by his Citi credit card to withdraw cash from an ATM machine, conduct a wire transfer of money, purchase gaming chips, place a wager, or any of the myriad examples of cash-like transactions listed by Citi in its Card Agreement.

38.     Had Plaintiff known Citi would start processing his Venmo MEP App payments as cash advance transactions, Plaintiff would not have funded his Venmo MEP App purchase transactions with his Citi credit card or would have used a different method of payment.

39.     Plaintiff and the Class would derive greater benefits from the use of their Citi credit cards as a result of timely and accurate disclosures by Citi concerning the cost of credit furnished by Citi applicable to MEP transactions.

40.     Plaintiff incurred cash advance fees for his use of a MEP App without any warning or disclosure from Citi that such transactions funded by a Citi credit card would incur a cash advance fee. As a result of Citi's contravention of its own Card Agreement as well as Citi's violation of Federal regulations and California unfair competition laws as discussed herein, Plaintiff suffered monetary damages from Citi's unlawful and deceptive conduct.

## CLASS DEFINITIONS AND ALLEGATIONS

41.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

42.     Plaintiff asserts his claims for breach of contract and violation of TILA on behalf of the following class ("**National Class**"):

> All persons and entities who within the applicable statute of limitations whose utilized a mobile electronic payment application to fund a payment transaction with a credit card issued by Defendant and such transactions were classified as cash advance transactions by Defendant.

43.     Plaintiff asserts his claims for violation of the UCL on behalf of the following subclass ("**California Subclass**"):

> All persons and entities residing within California who within the applicable statute of limitations utilized a mobile electronic payment application to fund a payment with a credit card issued by Defendant and such transactions were classified as cash advance transactions by Defendant.

44.     The National Class and California Subclass are referred to collectively herein as the "Class" or "Classes".

45.     Excluded from the Classes are Citi; any affiliate, parent, or subsidiary of Citi; any entity in which Citi has a controlling interest; any officer, director, or employee of Citi; any successor or assign of Citi; any Judge to whom this case is assigned as well as his or her immediate family and staff.

46.     Plaintiff reserves the right to amend or modify the Class definitions in connection with a motion for class certification or with the result of discovery.

## Numerosity

47.     The members of the Classes are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed and believes that the proposed Class contains at least thousands of Citi credit card customers who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

## Predominance of Common Issues

48.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    a.  whether Citi's disclosed credit card fees and applicable interest rates are considered material account terms;

    b.  whether Citi clearly and conspicuously disclosed fees and applicable interest rates applicable to MEP App payment transactions to Plaintiff and the Class;

    c.  whether Citi's application of cash advance fees, corresponding interest rates, and failure to provide a grace period to MEP App payment transactions are a breach of the Card Agreement discussed herein;

    d.  whether Citi's alleged conduct is unlawful;

    e.  whether Citi's alleged conduct constitutes a violation of TILA;

f.   whether Citi engaged in unfair and deceptive business practices;

g.   whether Plaintiff and the Class suffered monetary damages as a
     result of Citi's alleged unlawful conduct; and

h.   whether Plaintiff and Class members are entitled to appropriate
     statutory remedies, including restitution, corrective disclosures,
     and injunctive relief and statutory damages.

**Typicality**

49.    Plaintiff's claims are typical of the claims of the members of the
Classes because, inter alia, all Class members were injured through the uniform
misconduct described above and were subject to Citi's failure to disclose a material
significant change in the terms and conditions applicable to Citi's credit card
customers who made mobile electronic payments through MEP Apps funded by a
Citi credit card.  Plaintiff is also advancing the same claims and legal theories on
behalf of himself and all members of the Class.

**Adequacy of Representation**

50.    Plaintiff will fairly and adequately protect the interests of the
members of the Classes.  Plaintiff has retained counsel experienced in complex
consumer class action litigation, and Plaintiff intends to prosecute this action
vigorously.  Plaintiff has no adverse or antagonistic interests to those of the
Classes.

## Superiority

51.    A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Citi.  It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

52.    Plaintiff seeks equitable relief on behalf of the Classes, on grounds generally applicable to the entire Class and Subclass requiring Citi to provide full statutory and restitution relief to Plaintiff and Class members.

53.    Unless a Class is certified, Citi will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.

### Rule 23(b)(2)

54.     Class certification is also warranted under Rule 23(b)(2). A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (the requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole").

55.     Certification under Rule 23(b)(2) is appropriate here because all of the Class members have by definition been exposed to the same deficient terms and conditions governing credit card transactions by Citi that fail to meet the "clear and conspicuous" standard set forth under TILA.   Moreover, the declaratory and injunctive relief sought by Plaintiff are by definition generally applicable across the Class as a whole.

### Rule 23(b)(3)

56.     The Class may also be certified under Rule 23(b)(3) when questions of law or fact that are common to class members predominate over questions concerning individual members. Certification under Rule 23(b)(3) is appropriate when necessary to attain time, effort, and resource efficiencies as well as uniformity of decision applicable to similarly situated persons without sacrificing

procedural fairness. Predominance is found on sufficient cohesiveness among class members with a focus on whether common questions can be resolved in a single adjudication. *Walker v. Life Ins. Co. of Sw.*, 953 F.3d 624 (9th Cir. 2020) (citations omitted)

57.    Very few members of the Class will have the means to seek individual redress for the violations of TILA and UCL committed against them. Once Citi's liability has been established as to its failure to abide by the requirements of the TILA applicable to the uniform Citi credit card agreement and account disclosures held by all members of the Class, the Court can readily oversee the efficient administration of the Class claims.

58.    Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by the Court.

## COUNT I
### Breach of Contract
### (On Behalf of the Nationwide Class)

59.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

60.    Plaintiff brings this claim individually and on behalf of the Nationwide Class.

61.     Plaintiff entered into a Card Agreement with Citi upon his acceptance of the terms and conditions in his Citi Simplicity Credit Card Agreement.

62.     Under TILA, Citi was statutorily obligated to set forth terms and conditions to Plaintiff and other consumers concerning the applicable Annual Percentage Rate ("APR"), transaction costs, and grace period for the credit cards issued to Plaintiff and the Nationwide Class.

63.     Citi breached its Card Agreement by failing to clearly and conspicuously disclose it will process MEP App payments as a cash advance or cash-like transaction. Citi further breached its Card Agreement by failing to sufficiently define categories of mobile electronic payments that it would treat as a cash advance or cash-like transaction.

64.     Citi also breached its Card Agreement with Plaintiff and the Nationwide Class by imposing cash advance fees and interest charges on Plaintiff and the Nationwide Class for MEP App payment transactions without any contractual right to do so.

65.     As a result of Citi's breach, Plaintiff and the Nationwide Class were financially harmed by Citi's imposition of cash advance fees and interest charges that were not permitted under the terms of Citi's Card Agreement.

66.     On behalf of himself and all other members of the Nationwide Class, Plaintiff seeks class-wide relief in the form of restitution of the cash advance fees

and interest Citi received stemming from Citi's breach of its Card Agreement as well as all applicable interest, costs, and attorney fees as permitted by law.

### COUNT II
**Violation of Truth In Lending Act**
**15 U.S.C. §§1601, 1632, 1637, *et seq.* (via 12 C.F.R. §1026.9(c)(2))**
**(On Behalf of the Nationwide Class)**

67.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

68.    Plaintiff brings this claim individually and on behalf of the Nationwide Class.

69.    The overarching purpose of TILA is to equip credit card consumers with a full disclosure of credit card terms so consumers can be sufficiently informed and aware of the costs of credit available to them as well as safeguard against deceptive business practices and acts. 15 U.S.C. §1601(a)

70.    As alleged herein, Plaintiff paid vendors for music-related services via Venmo MEP App funded by his Citi Simplicity credit card. Without notice, Citi altered the classification of the MEP App transactions from a standard purchase transaction to a cash advance and processed the transaction as a cash advance.  As a result, Plaintiff incurred a cash advance fee, was deprived of the benefits of his 0% introductory interest rate while charged the higher Cash Advance APR interest rate and didn't receive the benefit of an interest-free grace period applicable on standard purchase transactions.

71.     Under TILA, creditors such as Citi are required to clearly and conspicuously disclose material terms including rates and fees to its credit card accountholders in its opening account disclosures. 15 U.S.C. §1637, *et seq*.

72.     Under Regulation Z, clear and conspicuous account opening disclosures to consumers has been required by the Consumer Protection Finance Bureau ("CPFB"). These account opening disclosures include, but are not limited to, transaction charges, grace periods, introductory rates, balance computation methodology, and cash advance fees. 15 U.S.C. §1637; See also 12 C.F.R. §§1226.1-1226.60 (enabling the CPFB to promulgate regulations pursuant to TILA).

**Transaction charges**. Any transaction charge imposed by the creditor for use of the open-end plan for purchases.
15 U.S.C. §1637(c)(1)(A)(ii)(III)

**Grace period**. The date by which or the period within which any credit extended may be repaid without incurring a finance charge due to a periodic interest rate and any conditions on the availability of the grace period.
15 U.S.C. §1637(c)(1)(A)(iii)(I)

**Balance computation method**. The name of the balance computation method listed in §1026.60(g) that is used to determine the balance on which the finance charge is computed for each feature, or an explanation of the method used if it is not listed, along with a statement that an explanation of the method(s) required by paragraph (b)(4)(i)(D) of this section is provided with the account-opening disclosures. In determining which balance computation method to disclose, the creditor shall assume that credit extended will not be repaid within any grace period, if any.
15 U.S.C. §1637(c)(1)(A)(iv)(I)

**Cash advance fee**. Any fee imposed for an extension of credit in the form of cash or its equivalent.

15 U.S.C. §1637(c)(1)(B)(i)

73.     TILA's clear and conspicuous notice requirement also extends to the type of credit card transactions that would incur different levels of interest rates in order to best inform the consumer of his or her use of credit.

**Type of transaction**. The type of transaction to which the [interest] rate applies, if different rates apply to different types of transactions.

12 C.F.R. §1026.6(b)(4)(i)(C); 12 CFR § 1026.9(c)(2)(B)(ii) and (iii).

74.     Citi failed to provide clear and conspicuous disclosure of any kind to Plaintiff and Nationwide Class Members regarding its intent to assess a cash advance fee to MEP App payments. Citi also failed to provide sufficient disclosure that it would alter the types of transactions to which the Cash Advance APR applied to include Venmo and other MEP App payment transactions; and failed to provide statutory written notice that a grace period would no longer be available for certain mobile electronic payment transactions.

75.     Plaintiff and Nationwide Class Members have been damaged by Citi's ongoing failure to provide clear and conspicuous disclosure of the type of transactions that would incur cash advance fees, higher interest charges, and the lack of an interest grace period.

76.     Plaintiff and Class Members request all statutory and actual damages pursuant to TILA as well as attorney fees and costs.

## COUNT III
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Civ. Code §§ 17200 *et seq.*
### (on Behalf of Plaintiff and the California Subclass)

77.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

78.     This claim is brought by Plaintiff and the California Subclass to obtain restitution and injunctive relief from Citi for acts and practices, as alleged herein, that violated §17200 of the California Business and Professions Code, commonly known as the UCL.

79.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice.

80.     The acts and practices of Citi as alleged above have caused Plaintiff and the other members of the California Subclass to lose money or property by being assessed a cash advance fee, being subject to a higher interest rate, and increased interest charges as a consequence of not being availed of an interest grace period that applies to standard purchase transactions. Citi's acts and practices are actionable under the "fraudulent", "unlawful" and "unfair" prongs of the UCL, as alleged with more specificity below.

81.     Citi has been unjustly enriched as a result of its wrongful acts of unfair competition.  Plaintiff and the other members of the California Subclass are accordingly entitled to injunctive relief prohibiting Citi from continuing such

practices including the insufficient disclosure of the costs of credit. Plaintiff and the other members of the California Subclass are also entitled to further equitable relief, including accounting, restitution and/or disgorgement of all revenues and profits that may have been obtained by Citi as a result of such business acts and practices, pursuant to California Business and Professions Code §§17203 and 17204.

### Fraudulent Prong

82.    By omitting to disclose its transaction categorization of MEP App payments funded by a Citi credit card and otherwise giving Plaintiff and the Subclass the false impression that MEP App payments would be processed as standard purchase transactions, Citi deceptively leads Plaintiff and the other members of the California Subclass to reasonably believe that their MEP App payments would not incur a cash advance fee and applicable interest for such transactions.

83.    As a consequence of Citi's failure to disclose the categorization of MEP App payments as cash advance transactions, Plaintiff and other members of the California Subclass unwittingly incurred cash advance fees and higher interest charges than they otherwise would have.

84.    Citi's conduct is deceptive within the meaning of the UCL's fraudulent prong as the public is likely to be deceived by Citi's practice of not

clearly and conspicuously disclosing MEP App payment transactions may be subject to cash advance fees and corresponding higher interest charges.

85.    Citi's undisclosed categorization of MEP App payments as a cash advance transaction is a material fact that has a direct effect on the cost of credit to a reasonable consumer. As such, a reasonable consumer would be deceived by Citi's failure to clearly and conspicuously disclose its processing of Venmo and PayPal mobile electronic payments as cash advance transactions.

**Unlawful Prong**

86.    Liability under the UCL is also established through a predicate violation of a relevant statute applicable to the underlying unfair and deceptive conduct.

87.    A violation of a relevant statute is an independently actionable violation of the UCL.

88.    As discussed more fully above, Citi is alleged to have violated material provisions of TILA that go to clear and conspicuous disclosure of terms and conditions that affect the cost of credit used by Plaintiff and Subclass members.

89.     Citi's conduct is unlawful within the context of the unlawful prong of the UCL.

90.    As a result of Citi's unlawful conduct in violation of TILA's clear and conspicuous notice provisions, Plaintiff and the Subclass were harmed by Citi's violation of the unlawful prong of the UCL.

**Unfair Prong**

91.    Citi engaged in "unfair" business acts or practices by, among other things, failing to disclose MEP App payments funded by Citi consumer credit cards would be categorized as cash advance transactions, while implicitly representing those same mobile electronic payments would be categorized as standard purchases as they had been processed prior to the undisclosed change by Citi.

92.    In the course of conducting business, Citi committed "unfair" business acts or practices, by which it has been unjustly enriched.  Because the utility of Citi's conduct (zero) is outweighed by the gravity of harm to Plaintiff, other members of the California Subclass, and the competitive market, Citi's conduct is "unfair" having offended an established public policy (TILA) concerning disclosure of material terms governing the cost of credit to consumers.  Further, Citi engaged in immoral, unethical, oppressive, and unscrupulous activities that are reasonably avoidable and substantially injurious to the public at large. There were reasonably available alternatives to further Citi's legitimate business interests other than the conduct described herein.

93.     Plaintiff and the other members of the California Subclass were economically harmed by Citi's alleged violations of the "unfair" prong of the UCL through their absorption of cash advance fees and higher interest charges without the benefit of a grace period.

94.     On behalf of himself and all other members of the California Subclass, Plaintiff accordingly seeks relief seeks restitution of the fees and interest charges Citi received because of Citi's violations and injunctive relief to correct or modify the disclosures in Citi's Card Agreements concerning standard purchase and cash advance transactions.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A.     Certification of this case as a class action on behalf of the National Class and the California Subclass, and certification of Plaintiff as an adequate Class Representative and his counsel as Class Counsel for both the National Class and the California Subclass;

B.     Issuance of a Court order finding Defendant in breach of its contract with Plaintiff and the other members of the National Class;

C.     Issuance of a Court order finding Citi in violation of TILA 15 U.S.C. §§1601, 1632, 1637, *et seq.*

D.     Issuance of a Court order finding Citi in violation of the UCL as

to Plaintiff and the other members of the California Subclass;

E.   Issuance of a Court order awarding appropriate equitable relief to Plaintiff and the other members of the Classes, including injunctive relief compelling Citi to proffer adequate public consumer disclosure about the costs of using its credit cards for mobile payment transactions; and restitution and disgorgement of Citi's receipt of cash advance fees and interest stemming from its insufficient and misleading disclosure of the cost of mobile electronic payments;

F.   An award of costs and reasonable attorneys' fees; and

G.   Such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable as permitted under applicable law.

Dated: May 7, 2021

**MANFRED, APC**

s/ Manfred P. Muecke
Manfred P. Muecke (SBN: 222893)
mmuecke@manfredapc.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: (619) 550-4005
Fax: (619) 550-4006

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CARLSON LYNCH LLP**
Todd D. Carpenter (SBN: 234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (SBN: 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: (619) 762-1910
Fax: (619) 756-6991

*Attorneys for Plaintiff*